**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARLOS RUBEN BERRIOS SANTIAGO<br><br>　　Plaintiff<br><br>　　　　v.<br><br>AMERICA CRUISE FERRIES, INC.;<br>ABC INSURANCE COMPANY;<br>JOHN DOE, RICHARD ROE;<br><br>　　Defendants | Civil No.:<br><br>Re:　PERSONAL INJURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

　　**COMES NOW** plaintiff, through his undersigned attorney, and very respectfully alleges the following causes of action against the above captioned defendants:

**I. JURISDICTION AND VENUE**

1. The present case involves, *inter alia*, the Admiralty and Maritime Jurisdiction of this Honorable Court and is hence a claim within the meaning of Fed.R.Civ.P. 9(h). Admiralty and Maritime Jurisdiction is based upon 28 U.S.C. Section 1331 and 28 U.S.C. Section 1333.

2. Supplemental jurisdiction for state based claims is based upon 28 U.S.C. Section 1333 and 28 U.S.C. Section 1367 (a).

3. Venue is proper inasmuch as the location of the incident was approximately two miles west of the entrance of San Juan Harbor, on the navigable waters of the United States, in connection with traditional maritime activity, i.e. the ferrying of passengers and

cargo from the Dominican Republic to Puerto Rico, aboard the M/V Caribbean Fantasy.

## II. PARTIES

4. Plaintiff Carlos Rubén Berríos Santiago, is a citizen of the Commonwealth of Puerto Rico, who on August 16, 2016 was traveling to Puerto Rico from the Dominican Republic aboard the M/V Caribbean Fantasy.

5. Defendant America Cruise Ferries, Inc. is a for profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico since 2010, with the capacity to sue and be sued, who by the time of the facts alleged on this complaint operated M/V CARIBBEAN FANTASY between Puerto Rico and the Dominican Republic.

6. Defendant ABC Insurance Company is joined as a defendant inasmuch as it issued one or more insurance policies or agreements that may provide coverage for the damages alleged herein.

7. Defendants John Doe and Richard Roe are other potentially liable parties sued under fictitious names because their true identities are unknown at this time.

## III. FACTS

8. Plaintiff Carlos Rubén Berríos Santiago purchased a round-trip ticket for a voyage from San Juan, Puerto Rico to the Dominican Republic and back to San Juan, aboard the M/V CARIBBEAN FANTASY.  He boarded the vessel in San Juan on August 10, 2016, made an uneventful voyage to the Dominican Republic, and after spending a few days there, boarded the vessel once again on August 16, 2016, at approximately 7:00 p.m., for the return trip to San Juan.

9. During the crossing from the Dominican Republic to Puerto Rico, as the vessel approached the area of Vega Baja on the north coast of Puerto Rico, plaintiff Carlos

Ruben Berríos Santiago was seated in the passenger seating area, and began to notice an acrid, burning smell. For the following 45 minutes, the burning smell continued, yet none of the crew of the M/V CARIBBEAN FANTASY gave any indication that anything was wrong.

10. About 45 minutes after first percieving the burning smell, plaintiff and the other passengers seated nearby noticed white smoke coming from the back of the vessel and filling the passenger area. The plaintiff also noticed that the vessel's engines had apparently shut down and it was not moving. Shortly thereafter, a crewmember came into the passenger area and announced that there was a fire onboard. Subsequently, an announcement was made over the loudspeaker, first in English and then in Spanish, for passengers to prepare to abandon ship.

11. Upon hearing the announcement, panic broke out among many of the passengers, some of whom became hysterical. Plaintiff felt extremely anxious and fearful, as the vessel was far from shore and the smoke was becoming thicker. His thoughts raced, and he considered the possibility that it might be the last day of his life. Using his cellular phone, he called his sister in Puerto Rico, who did not believe what he was telling her until the fire was reported by the local television news.

12. The crew instructed the passengers to line up in the hallways in order to proceed to the evacuation area. It was between 7:30 A.M. and 8:00 A.M. when the crew started the evacuation process. The crew guided the passengers to the upper deck of the vessel, where they provided personal flotation devices to the passengers.

13. On the upper deck, there were many passengers in full panic mode. The scene was chaotic, with passengers shouting, crying, and pushing each other. The acrid white smoke from the fire onboard filled the air and burned the plaintiff's eyes and throat. The motion of the vessel in the ocean swell made things worse, and the plaintiff felt nausea and began to sweat profusely. At one point his cellular phone slipped from his hands onto the deck, cracking the screen.

14. The plaintiff watched as the crew herded about one hundred passengers into a lifeboat and attempted to launch it.  The automatic pulley system did not function, however, so the crew had to manipulate the pulleys by hand in order to launch the lifeboat.  Because of the ocean swell, as it was being lowered the lifeboat smashed into the side of the vessel several times with an impact so violent that some of the passengers were expelled into the sea and had to be rescued by the Coast Guard and other nearby vessels which had come to assist the M/V CARIBBEAN FANTASY.  When they finally managed to lower the lifeboat, it could not immediately be released from the cable, however.

15. The plaintiff continued to observe as another lifeboat was filled up with passengers and the crew once again attempted to launch it.  As it was being lowered it also smacked into the vessel's hull several times but did not break.  Various crew members began to throw life rafts into the sea but the life rafts did not inflate automatically as expected, and the crew had to go down and inflate them manually.  During all of this process, the crew and the passengers were suffocated by the smoke from the fire onboard.  The plaintiff covered his mouth and nose but could not avoid inhaling the acrid white smoke.  He saw several dogs running lose in the area.  Children were crying inconsolably.  Some passengers were vomiting and even defecating themselves.  It was a hellish and disturbing scene.

16. After what seemed like an eternity, crew members guided the rest of the passengers, including plaintiff, to the rear of the vessel near the boilers, precisely from where the smoke was emanating, in order to reach the escape slides.  Plaintiff and numerous other passengers got in line to jump down the escape slides, waiting their turn, all the

while constantly inhaling smoke from the onboard fire. After an extended wait, the crew moved the plaintiff and remaining passengers inside to avoid the smoke. Despite this, plaintiff's desperation and anxiety increased with each passing minute as he could not see what was happening outside.

17. The passengers had to go down on the slide one by one because the slide was deflated. The Coast Guard personnel had to maneuver to stretch the slide with a Coast Guard boat. The process was slow and plaintiff was constantly fighting a feeling of panic, as he thought he might not get off the vessel before it was consumed by the still burning fire.

18. After waiting in line for more than an hour, plaintiff finally managed to jump on the slide. During this process plaintiff sustained cuts, bruises and abrasions on his hands and arms. He was brought aboard a Puerto Rico Police vessel and transported along with other passengers to a pier in San Juan Bay.

19. The first passengers to disembark were those who were severely injured, vomiting, or dehydrated. Plaintiff disembarked subsequently and proceeded to a tented area, where medical personnel placed a green band upon his wrist. His personal information was taken and he was given a bottle of water. Dr. Ana Rius, Puerto Rico Secretary of Health, asked him how he felt and instructed a paramedic to move him to another tent for evaluation, but plaintiff was subsequently instructed to board a bus to be taken to the Panamerican Pier in Isla Grande.

20. At the Panamerican Pier other personnel took the personal information of the passengers and checked their passports. Then they exited through the front of the dock and there was no further orientation, food or water. Plaintiff waited for a co-worker to

pick him up and drive him home. His belongings, left aboard the M/V CARIBBEAN FANTASY, were never returned to him and are presumed lost.

## IV. DAMAGES

21. The plaintiff suffered physical damages as a result of the negligence of the defendants, including exposure and inhalation of harmful smoke for a period of several hours, cuts and abrasions on his hands and arms, exacerbation of pre-existing back pain due to herniated disks, nausea, and diaphoresis.

22. The plaintiff suffered emotional and mental damages as a result of the negligence of the defendants, including extreme panic, sadness, depression and anxiety during the ordeal, post-traumatic stress, and the exacerbation of previously treated emotional conditions.

23. The plaintiff also lost his cell phone, luggage and personal items as a result of the negligence of the defendants, all of which is valued at approximately $1,500.00.

## V. CAUSES OF ACTION

24. The allegations of the preceding paragraphs are realleged as if fully set forth in their entirety.

25. The defendant America Cruise Ferries, Inc., operators of the M/V CARIBBEAN FANTASY, was negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly maintain the vessel in safe and seaworthy condition, resulting in the onboard engine-room fire that caused the plaintiff's damages alleged herein.

26. The M/V CARIBBEAN FANTASY had suffered various failures in its propulsion, mechanical and electrical systems during the voyages immediately prior to the

incidents alleged herein, thereby placing the defendant, America Cruise Ferries, Inc., operators of the vessel, on notice of the need to conduct proper maintenance and refurbishment of its propulsion, mechanical and electrical systems, which defendant failed to do.

27. The defendant America Cruise Ferries, Inc., operators of the M/V CARIBBEAN FANTASY, was also negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly maintain the vessel's lifeboats, escape slides and other safety equipment in proper working order, resulting in unnecessary delays in the evacuation of the vessel and contributing to the damages alleged herein.

28. The defendant America Cruise Ferries, Inc., operators of the M/V CARIBBEAN FANTASY, was also negligent and breached its duty of care towards plaintiff, inasmuch as it failed to properly train the vessel's crew in emergency procedures, resulting in unnecessary delays in the evacuation of the vessel and contributing to the damages alleged herein.

29. Under the general maritime law of the United States, the owners and operators of the M/V CARIBBEAN FANTASY owed the highest degree of care to their passengers, to ensure that the motor vessel on which they were traveling was in all respects seaworthy, staunch, fit and suitable for its intended purpose, and to ensure that the passengers did not come to any harm during the voyage.  The defendants owners and operators of the M/V CARIBBEAN FANTASY breached such duty of care through the actions and omissions set forth in this complaint.

30. Under Articles 1802 and 1803 of the Civil Code of Puerto Rico, the defendants are jointly and severally liable for all damages caused to the plaintiff by the negligence of

the operators and crew of the M/V CARIBBEAN FANTASY, as fully alleged herein.

31. For these damages plaintiff claims a sum not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) as compensation.

32. To the extent the defendant deny liability for the damages herein alleged, they act with obstinacy and temerity and are hence liable for prejudgment interest and attorney's fees.

**WHEREFORE**, the plaintiff very respectfully pray that the Honorable Court enter judgment against the defendant and award damages in his favor in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus costs, interest and attorney's fees.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 29th day of August, 2016.

S/Manuel San Juan
_____

MANUEL SAN JUAN
Attorney for Plaintiff
USDC-PR No.:  204706
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
206 Tetuán, Banco Popular Bldg. Suite 902
Old San Juan, Puerto Rico 00901
Tel.:  (787) 723-6637 / 723-6669
Fax:  (787) 725-2932
E-mail:  evelyna669@yahoo.com